UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                          :          Chapter 11
                                                :
HS 45 JOHN LLC,                                 :          Case No. 15-10368 (SHL)
                                                :
                          Debtor.               :
-------------------------------------------------------X
45 JOHN NY, LLC,                                :          Adv. Proc. No. 16-01180 (SHL)
                                                :
                          Plaintiff,            :
                                                :
               -against-                        :
                                                :
HS 45 JOHN LLC,                                 :
                                                :
                          Defendant.            :
-------------------------------------------------------X

<u>**MEMORANDUM OF DECISION**</u>

**A P P E A R A N C E S :**

**GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
*Counsel for HS 45 John LLC*
1501 Broadway, 22nd Floor
New York, NY 10036
By:    J. Ted Donovan, Esq.

**SHER TREMONTE LLP**
*Counsel for 45 John NY, LLC*
80 Broad Street, Suite 1301
New York, NY 10004
By:    Justin M. Sher, Esq.
        Mark Cuccaro, Esq.

**SEAN H. LANE,**
**UNITED STATES BANKRUPTCY JUDGE**

        Before the Court is the motion of HS 45 John LLC (the "Defendant" or the "Debtor") for

summary judgment dismissing this adversary proceeding [ECF No. 9] (the "Motion"), and the

motion of 45 John NY, LLC (the "Plaintiff" or the "Purchaser") opposing the Motion and cross-

moving for summary judgment [ECF No. 16] (the "Cross-Motion" and, together with the

Motion, the "Motions").  For the reasons stated below, the Court denies both Motions.

## BACKGROUND

To understand the present Motions, some background on Debtor's related bankruptcy

case is necessary.  The Debtor filed for Chapter 11 relief on February 20, 2015.  *Defendant's*

*Response to Plaintiff's Statement of Allegedly Undisputed Facts* ("Undisputed Facts") ¶ 1 [ECF

No. 18].  Debtor was the proposed purchaser of the real property located at 45 John Street, New

York, NY (the "Property") under a September 19, 2014 contract with 45 John Lofts LLC, the

owner at that time.  Undisputed Facts ¶¶ 2–3.  The Debtor alleges that after making a down

payment of $14.33 million toward the $65.9 million purchase price, the principals of 45 John

Lofts LLC, Chaim Miller and Sam Sprei, misappropriated the bulk of the deposit and then failed

to close.  Motion ¶ 7.  The resulting default interest and potential foreclosure action motivated

Debtor's Chapter 11 filing.  *Id.* ¶ 8.

In its resolution of the bankruptcy, the Debtor together with 45 John Lofts LLC

(collectively the "Sellers") agreed to sell the property to the Purchaser.  Cross-Motion at 2;

Undisputed Facts ¶ 3.  The parties entered into an Asset Purchase Agreement, dated October 19,

2015 (the "APA") [ECF 1-1], for the sale and purchase of the Property.  Undisputed Facts ¶ 3.

The APA set a purchase price of $73M.  APA § 3.1.  For the purposes of this adversary

proceeding, the relevant provisions of the APA include the following definitions and

representations:

-   "Debtor and 45 John Lofts collectively, the '<u>Seller</u>' . . . ." (APA at 1);

-   "The [Property] is sold and shall be conveyed free and clear of all claims, liens, taxes,
    and encumbrances of any kind or nature whatsoever, to the fullest extent permitted under
    11 U.S.C. § 363 (b) and (f) . . . ." (APA § 2.1);

2

- "The [Property] is currently vacant and no person or entity has any right or option to lease or acquire any portion thereof." (APA § 7.1.3); and

- "Seller has not entered into any leases, licenses or other occupancy agreements, or any service contracts or other contracts or agreements affecting any portion of the [Property]." (APA § 7.1.5).

The APA was approved by this Court pursuant to the *Order Confirming Debtor's Chapter 11 Plan Of Reorganization As Supplemented And Approving The Sale Of Real Property At 45 John Street, New York To 45 NY LLC Free And Clear Of All Claims, Liens, Taxes And Non-Permitted Encumbrances* dated December 22, 2015 (the "Approval Order") [Case No. 15-10368, ECF No. 184].

Purchaser closed on the Property on January 15, 2016 (the "Closing"). Motion ¶ 9. Before closing on the Property, the Purchaser conducted on-site due diligence during which it encountered a cell tower structure on the Property (the "Cell Tower"). Undisputed Facts ¶ 8. As it turned out, an earlier fee owner of the Property had entered into an N.Y. Structure Lease Agreement, dated December 14, 2004 (the "Cell Tower Lease"), with Lin Cellular Communications Corporation (NY), LLC, which subsequently became Cingular Wireless PCS LLC (also known as AT&T Wireless) (hereinafter "AT&T"). Undisputed Facts ¶ 9. On or around the date of the Closing (January 15, 2016), the parties established an escrow of $25,000 to be held by "Kevin Nash, Esq. of Goldberg Weprin Finkel Goldstein LLP, as disbursing agent under the Plan . . . pending resolution of the motion to terminate or reject the [AT&T] Cell Tower Lease," and memorialized by an "Escrow Receipt." *Complaint to Recover Money From Debtor* Ex. B (the "Escrow Agreement") [ECF No. 1]. The parties dispute what was known by whom regarding the Cell Tower Lease at the time of the Closing, what representations were made regarding any planned removal of the Cell Tower, the purpose and scope of the Escrow

3

Agreement, and the impact of the Cell Tower on the condition of the Property. *See* Undisputed Facts.

Ultimately, the Debtor filed *Debtor's Motion To Terminate Cell Tower Lease Or Alternatively To Reject Cell Tower Lease* (the "Rejection Motion") [Case No. 15-10368, ECF No. 188]. That Rejection Motion was opposed by AT&T. *See AT&T's (A) Objection To Debtor's Motion To Terminate Cell Tower Lease or Alternatively To Reject Cell Tower Lease And (B) Motion Pursuant To FRCP 60(B) For Relief From Sale Order* (the "Rejection Objection") [Case No. 15-10368, ECF No. 193]. In late June 2016, the Court held a hearing on the Rejection Motion (the "Rejection Hearing"), at which time the Court denied the Rejection Motion and granted AT&T's requested relief under Rule 60(b) of the Federal Rules of Civil Procedure ("FRCP"). *See* H'rg. Tr. [Case No. 15-10368, ECF No. 223]. The Court memorialized its ruling with a subsequent order dated July 11, 2016 (the "Rejection Order") [Case No. 15-10368, ECF No. 221]. No appeal was filed from the Rejection Order.

At the Rejection Hearing, the Court touched on the issue of potential Debtor liability related to the Cell Tower Lease as it attempted to ascertain the parties' views on their respective rights and any anticipated additional litigation. After the Court explained that its understanding at that time was that such liability was limited to the $25,000 held in escrow, the Court requested confirmation of its understanding from Debtor's counsel while inviting "anybody else [to] chime in if they disagree[d] or . . . want[ed] to be heard on th[e] issue." Hr'g. Tr. 14:18–20. Debtor's counsel responded affirmatively and Purchaser's counsel said nothing. Hr'g. Tr. 14:18–15:7. The Court followed up on these comments with a similar observation in the Rejection Order, while explicitly preserving AT&T and Purchaser's "rights, claims, and defenses under the Cell Tower Lease and applicable non-bankruptcy law . . . ." Rejection Order at 2. The parties dispute

4

the significance of the Court's statements as well as each other's responses (or lack thereof).

These disputes are at the core of the Motion and Cross-Motion.

On July 6, 2016, Purchaser commenced the instant adversary proceeding asserting claims

against Debtor for breach of contract under the APA.  *See Complaint to Recover Money From*

*Debtor* (the "Complaint") at 4, ¶ 17 [ECF No. 1].  In the Complaint, Purchaser alleges that

Debtor breached the APA by (1) failing to ensure the Property was "free and clear of all claims,

liens, taxes and encumbrances of any kind or nature whatsoever" (APA § 2.1); (2) failing to

ensure the Property was "vacant and no person or entity ha[d] any right or option to lease or

acquire any portion thereof" (APA § 7.1.30); and (3) falsely representing that it had "not entered

into any leases, licenses, or other occupancy agreements, or any service contracts or other

contracts or agreements affecting any portion of the John Street Property" (APA § 7.1.5).

Purchaser contends that the result of these alleged breaches of the APA is that Purchaser is

unable to use the premises as intended.  Complaint ¶ 15; *see id.* ¶ 14 (alleging that the continuing

presence of the Cell Tower has "caused considerable damage" to the premises); *see Declaration*

*of Vlad Tsirkin* ("Tsirkin Decl.") ¶ 13 [ECF No. 16-8].  Purchaser specifically requests that the

Court award damages of $500,000 (Complaint ¶ 20), which matches its report of AT&T's

estimated cost to remove or relocate the Cell Tower (Complaint ¶ 17).  Purchaser contends that it

is now entitled to prevail on its claims as a matter of law.  *See* Cross-Motion at 1.

Debtor does not deny the existence of a contract or that Purchaser upheld its performance

obligations by paying the purchase price.  Rather, Debtor challenges the breach allegations and

offers several affirmative defenses that it argues should result in summary judgment in its favor.

Specifically, Debtor argues that Purchaser waived its contractual rights to sue for breach of the

APA by its actions in relation to the Rejection Hearing (including the creation of the escrow),

and that the Court's Rejection Order precludes Purchaser's Complaint under the doctrines of res

judicata, collateral estoppel, and the law of the case.  Motion ¶ 22; *Debtor's Reply Memorandum*

*of Law in Further Support of Motion for Summary Judgment Dismissing* ("Debtor Reply and

Opp.") at 4–6 [ECF No. 17].  Debtor asserts that if it does not prevail on its affirmative defenses,

the Court should deny summary judgment to the Purchaser because Debtor has not breached

APA Sections 7.1.5 or 7.1.3, and because in regards to Purchaser's rights to sue, the APA and

Escrow Agreement read together are at best ambiguous.  Debtor Reply and Opp. at 4.

## DISCUSSION

### A. Applicable Standards

#### 1. *Summary Judgment*

FRCP 56 governs the granting of summary judgment and is made applicable to this

adversary proceeding under Rule 7056 of the Federal Rules of Bankruptcy Procedure.  Summary

judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the [movant] is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  "The party seeking summary judgment bears the burden of

establishing that no genuine issue of material fact exists and that the undisputed facts establish

[the movant's] right to judgment as a matter of law."  *Rodriguez v. City of New York,* 72 F.3d

1051, 1060–61 (2d Cir.1995); *see McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC),*

439 B.R. 47, 58 (Bankr. S.D.N.Y. 2010).

If the movant carries this initial burden, the nonmoving party must set forth specific facts

that show triable issues, and cannot rely on pleadings containing mere allegations or denials.  *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986); *see also Lipton*

*v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995); *In re: Residential Capital, LLC*, 533 B.R. 379,

395–96 (Bankr. S.D.N.Y. 2015).  "[T]he mere existence of *some* alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment . . . ."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  If the

Court determines that "the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party, there is no genuine issue for trial."  *Matsushita*, 475 U.S. at 587

(citations omitted).  "In deciding whether material factual issues exist, all ambiguities must be

resolved and all reasonable inferences must be drawn in favor of the nonmoving party."  *In re*

*Ampal-Am. Israel Corp.*, No. 12-13689 (SMB), 2015 WL 5176395, at *10 (Bankr. S.D.N.Y.

Sept. 2, 2015), *aff'd sub nom. In re: Ampal-American Israel Corp.*, No. 15-CV-7949 (JSR), 2016

WL 859352 (S.D.N.Y. Feb. 28, 2016), *aff'd sub nom. In re Ampal-Am. Israel Corp.*, 677 F.

App'x 5 (2d Cir. 2017) (citing *Matsushita*, 475 U.S. at 587).  The Court may also grant some but

not all of the relief requested in a summary judgment motion if it finds disputed issues of fact as

to some of the issues presented.  *In re: Residential Capital*, 533 B.R. at 395 (citing Fed.R.Civ.P.

56(g)).

   2.  *Breach of Contract*

      By its terms, the APA is governed by New York law.  APA § 17.  To establish a claim

for breach of contract under New York law, a plaintiff must prove four elements: "(1) the

existence of a contract, (2) performance of the contract by one party, (3) breach by the other

party, and (4) damages suffered as a result of the breach."  *Glob. Packaging Servs., LLC v. Glob.*

*Printing & Packaging*, No. 15-CV-7747 (NSR), 2017 WL 1232731, at *3 (S.D.N.Y. Mar. 31,

2017) (citing *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).

Under New York law, "the interpretation of a contract is a question of law that may be properly decided on a motion for summary judgment, provided the language of the contract at issue is clear, not ambiguous.  *In re: Residential Capital*, 533 B.R. at 398 (collecting cases). "Thus, '[i]n a dispute over the meaning of a contract, the threshold question is whether the contract is ambiguous…. When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms.'"  *In re DPH Holdings Corp.*, 553 B.R. 20, 27 (Bankr. S.D.N.Y. 2016) (quoting *Lockheed Martin Corp. v. Retail Holdings, N.V.,* 639 F.3d 63, 69 (2d Cir. 2011)) (alteration in original) (omission in original).  "[C]ontract language is ambiguous if it is reasonably susceptible to more than one meaning."  *In re: Residential Capital*, 533 B.R. at 398 (internal quotations omitted).  "The language of a contract is not made ambiguous simply because the parties urge different interpretations in the litigation, nor does ambiguity exi[s]t where one party's view strains the contract language beyond its reasonable and ordinary meaning . . . or where 'ambiguity' emanates not from the language used in the contract but, rather, from a party's subjective perception of its terms."  *In re DPH Holdings Corp.*, 553 B.R. at 27 (citations omitted).  Finally, "'[t]o the extent the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case.'"  *In re Old Carco LLC*, 538 B.R. 674, 681 (Bankr. S.D.N.Y. 2015) (quoting *Topps Co. v. Cadbury Stani S.A.I.C.,* 526 F.3d 63, 68 (2d Cir. 2008)).

## B.  Debtor's Alleged Breaches

Purchaser alleges three breaches of the APA, all stemming from the Cell Tower and Cell Tower Lease.

The first alleged breach involves APA Section 2.1, which states that "[t]he John Street Property is sold and shall be conveyed free and clear of all claims, liens, taxes and encumbrances of any kind or nature whatsoever, to the fullest extent permitted under 11 U.S.C. § 363(b) and (f) . . . ." APA § 2.1. This standard bankruptcy sale language, written in parallel to the language of the cited Bankruptcy Code provision, is clear and unambiguous on its face. Based on the undisputed facts, the continuing validity of the Cell Tower Lease places the Debtor in breach of this provision.

Second, Purchaser claims that Debtor breached APA Section 7.1.5. That Section, in relevant part, states that "Seller has not entered any leases . . . affecting any portion of the John Street Property." Debtor counters that it "was entirely accurate in this statement, as the Debtor was not a party to the Cell Tower Lease, which is dated 2004, some ten years before the Debtor became a contract vendee of the Property." Debtor Reply and Opp. at 4–5. As the text of Section 7.1.5 is unambiguous, and the Debtor did not enter into Cell Tower Lease, the Debtor would appear at first blush to prevail on this claim.

However, Section 7.1.5 actually represents that not only the Debtor, but also 45 John Lofts, LLC, the entity controlled by Chaim Miller and Sam Sprei, had not entered "any leases . . . affecting any portion of the John Street Property." APA § 7.1.5; *see* APA at 1 (defining "Seller" as "Debtor and 45 John Lofts collectively"). Purchaser correctly pointed out that "the Cell Tower Lease ran with the [Property]" *Plaintiff's Memorandum of Law in Reply To Debtor's Opposition to Plaintiff's Motion for Summary Judgment* ("Purchaser Reply") at 4 [ECF No. 20][1]. The Lease reads: "[t]he terms and conditions contained in this Agreement will run with the

---

[1]        The Court cites to the earlier filings in the main bankruptcy to underscore to readers the level of confusion and disagreement regarding the facts in this case, not as the basis for its resolution of the Motions.

Property and bind and inure to the benefit of the parties, their respective heirs, executors, administrators, successors and assigns."  Purchaser Reply at 4 n.2 (quoting Cell Tower Lease § 22(c)).  While Debtor never actually acquired the Property, it is undisputed that 45 John Lofts, LLC was the owner prior to the Closing.[2]  Given the undisputed facts, therefore, 45 John Lofts, LLC—and accordingly the "Seller" as defined under the APA—was in breach of Section 7.1.5 at the date the contract was signed.[3]

Purchaser's third breach allegation relies on APA Section 7.1.3, which states that "the John Street Property is currently vacant and no person or entity has any right or option to lease or acquire any portion thereof."  APA § 7.1.3.  Debtor argues that this representation was true as "the import and intent of this representation was that there were no people residing as tenants in the building."  Debtor Reply and Opp. at 5.  The Court finds this provision to be clear on its face and in support of Purchaser's interpretation.  By use of the words "person or entity" the contract clearly contemplates that a business (such as AT&T) as well as an individual might lease space within the building.  APA § 7.1.3.  By use of the words "any portion thereof," the contract left open-ended the nature of the "right or option to lease or acquire" beyond the traditional tenancy of an apartment or office unit within the building.  *Id.*; *see In re: Residential Capital*, 533 B.R. at 399 (intent "must be gleaned from within the four corners" of the written instrument).

---

[2]    Moreover, in its Rejection Objection filed prior to the Rejection Hearing, AT&T informed this Court that it remained current on its rent payments under the Lease to the "Landlord of record as of February 2016," noting that from July 2014 to February 2015, its checks were cashed "by either SoftStone Development on behalf of 45 John Lofts LLC or by 45 John Lofts LLC directly . . . ."  Rejection Objection ¶ 14.  Even AT&T is unclear what entity was cashing its checks over the subsequent year.  *See id.*

[3]    The Court notes that the APA provides no guidance as to the sharing of liability between selling parties in such a situation—by contrast to purchasing parties—and neither party involved in the current adversary proceeding has discussed the issue in any briefing.  *See* APA § 21 ("If *Purchaser* consists of two or more parties, the liability of such parties shall be joint and several.") (emphasis added).

Notwithstanding the breach of these three APA provisions, summary judgment for the

Purchaser is not appropriate because Defendant has raised material questions of fact regarding

the effect of the Escrow Agreement and its waiver defense.  Specifically, Debtor argues that the

Purchaser's rights to sue under the APA were modified and/or waived by the Escrow Agreement.

That Agreement in its entirety is only a single paragraph and reads as follows:

> Escrow Receipt: The undersigned Kevin Nash, Esq. of Goldberg Weprin Finkel
> Goldstein LLP, as disbursing agent under the Plan shall hold the sum of $25,000 in
> escrow (the "Escrow") pending resolution of the motion to terminate or reject the
> [AT&T] Cell Tower Lease (the "Lease"). The motion to terminate or reject the
> Lease will be filed within 10 days of the date hereof for a hearing at the first
> available date. The escrow shall remain in place for a period of no more than 90
> days and may be used to fund any resolution of the [AT&T] claim. In the event the
> Lease is not terminated and the equipment is not removed (at no cost to Purchaser),
> within 90 days, the escrow agent will turn over the Escrow to Purchaser without
> any further notice [of] delay.

Escrow Agreement.  The parties offer competing interpretations of the purpose and intended

reach of the Escrow Agreement.  Debtor alleges that the Escrow Agreement was intended to

establish the $25,000 as a cap on all potential Debtor liability related to the Cell Tower Lease.

Motion ¶¶ 2–5.  In contrast, Purchaser contends that the escrow was only "intended to cover the

Plaintiff's attorneys fees' [sic] in connection with the removal of the Cell Tower structure" and

was neither "a cap on damages" nor "Plaintiff's sole remedy."  Cross-Motion at 3; Tsirkin Decl.

¶¶ 10–11.[4]

The Court finds the Escrow Agreement to be ambiguously written and potentially

supportive of either parties' interpretation.  The Escrow Agreement dictates clearly the

conditions upon which the disbursing agent is to turn over the escrow to Purchaser, but nothing

---

[4]        Significantly, Purchaser also argues that the Escrow Agreement itself was not a valid modification of the
contract and therefore should not impact the Court's analysis of the Section 2.1 breach allegation.  Purchaser Reply
at 4–5.  As resolution of this argument is inextricably linked to Debtor's waiver defense, the Court analyzes both
together below.  As explained in that analysis, the Court finds it appropriate to consider the Escrow Agreement for
purposes of both Motions for summary judgment.

else.  It makes no mention of attorneys' fees, limits, caps, remedies, or damages of any kind.  A reasonably intelligent person might extrapolate not only the two proposed interpretations, but several others as well.  *See In re DPH Holdings Corp.*, 553 B.R. at 26 ("Under New York law, a contract is ambiguous if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person . . . .") (quoting *Chesapeake Energy Corp. v. The Bank of New York Mellon Trust Co., N.A.,* 773 F.3d 110, 113–14 (2d Cir.2015)).

Summary judgment based on the Escrow Agreement might still be warranted "if the [Escrow Agreement's] ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation . . . ."  *In re Old Carco LLC*, 538 B.R. at 681 (quoting *Topps Co.,* 526 F.3d at 68).  But the extrinsic evidence here is just as ambiguous as the text itself. Purchaser submitted the Declaration of its Chief Financial Officer.  *See* Tsirkin Decl.  But the CFO's statements here are nothing more than bald assertions of intent, without explanation of the basis of his knowledge, and met by direct denials.  *See* Undisputed Facts ¶¶ 10–11.  Debtor responds first by observing that Purchaser was aware of the existence of the Cell Tower prior to Closing, and although it had the "right under the APA to postpone the closing . . . , it did not do so, electing to close immediately instead."  Debtor Reply and Opp. at 5; Undisputed Facts ¶ 8. Second, Debtor highlights Purchaser's silence during the Rejection Hearing regarding the Cell Tower Lease and any related liability in the face of repeated reference to the issues and questioning by the Court[5] as well as a statement filed by the Debtor prior to the Rejection Hearing.[6]  Altogether, these competing facts offer no improved clarity.

---

[5]      Hr'g. Tr. 11:23–12:9, 14:4–8; 14:17–15:5, 16:16–23, 18:3–10.

[6]      The statement reads:

At the request of the Buyer, an escrow of $25,000 was established at closing to cover issues arising in connection with the Cell Tower Lease.  Beyond the escrow, the Debtor has no liability to the Buyer.  Additionally as requested, the Debtor moved to terminate the cell tower lease in view of the prolonged non-payment of rents, or, alternatively, to reject the cell tower lease with the accrued

In addition to the lack of clarity about the meaning of the Escrow Agreement, the factual picture is further muddied by the "no modification" clause in the APA.  APA § 19.  That clause dictates that the "APA may not be modified, changed, supplemented or terminated, nor may any obligations hereunder be waived, except by written instrument signed by the party to be charged or by its agent duly authorized in writing or as otherwise expressly permitted herein."  *Id.* Purchaser relies on the "no modification" clause to challenge the Escrow Agreement's validity as a modification of the APA.  Purchaser Reply at 4–5; Motion ¶¶ 2–5.  The Escrow Agreement was signed only by Kevin Nash, counsel to the Debtor, and not by any representative of the Purchaser, supporting the notion that the Escrow Agreement may simply be an escrow arrangement rather than a binding contract modification.  S*ee, e.g., Argilus, LLC v. PNC Fin. Servs. Grp., Inc.*, 419 F. App'x 115, 118–119 (2d Cir. 2011) (holding that an unsigned memo accompanying an executed confidentiality agreement could not validly modify that agreement in contravention of a similar no waiver or modification clause).

But "no modification" or "no waiver" clauses can themselves be waived and the competing factual narratives presented by the parties raise that possibility here.  *See Luitpold Pharm.* 784 F.3d at 95 (citing *510 Joint Venture v. Solcoor, Inc.,* 177 A.D.2d 465, 575 N.Y.S.2d 897, 899 (2d Dep't 1991)).  Counting the facts in favor of the non-moving parties then, neither side carries the burden to triumph on its own summary judgment motion.  Given the questions raised as to the nature of the Escrow Agreement and, therefore, what the parties believed was at stake at the Rejection Hearing, further development of the factual record is required.

---

arrears to be offset against possible rejection damages.  That motion remains pending before the Court, and is now being pursued by counsel for the Buyer.

*Debtor's Statement With Respect To the Cell Tower*, June 6, 2016 ¶ 4 [Case No. 15-10368, ECF No. 213].

## C. <u>Waiver</u>

Under New York law, "[a] breach of contract may be waived by the non-breaching party." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585–86 (2d Cir. 2006) (citations omitted).  Waiver requires that a contractual right be "knowingly, voluntarily and intentionally abandoned." *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 95 (2d Cir. 2015) (quoting *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.,* 7 N.Y.3d 96, 104 (2006)); *see Am. Int'l Grp. Europe S.A. (Italy) v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 380 (S.D.N.Y. 2010) ("A party has waived a contractual right when it voluntarily and intentionally abandons the enforcement of that right.") (citations omitted).  "[W]aiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection." *Luitpold Pharm.* 784 F.3d at 95 (quoting *Fundamental Portfolio Advisors,* 7 N.Y.3d at 104); *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14CV04394AJNBCM, 2016 WL 4613390, at *15 (S.D.N.Y. Aug. 31, 2016) (same).  "'[M]ere silence, oversight or thoughtlessness in failing to object' is insufficient to support an inference of waiver." *Luitpold Pharm.*, 784 F.3d at 95 (quoting *Courtney–Clarke v. Rizzoli Int'l Publ'ns, Inc.,* 251 A.D.2d 13 (1st Dep't 1998)); *Beth Israel*, 448 F.3d at 586 (same); *Am. Int'l Grp.*, 756 F. Supp. 2d at 380 (same).

Waiver "is essentially a matter of intent which must be proved." *Beth Israel*, 448 F.3d at 585 (quoting *Jefpaul Garage Corp. v. Presbyterian Hosp.,* 61 N.Y.2d 442, 446 (1984)).  "[T]he intent to waive is usually a question of fact." *Id.* (quoting *Jefpaul Garage,* 61 N.Y.2d at 448) (alteration in original); *see McDarren v. Marvel Entm't Grp., Inc.*, No. 94 CIV. 0910 (LMM), 1995 WL 214482, at *5 (S.D.N.Y. Apr. 11, 1995) ("An implied waiver is invariably a matter of

intention and, therefore, an issue of fact.") (citations omitted).  Accordingly, "where a waiver is

not express, but found in the acts of a party, summary judgment is not appropriate."  *McDarren*,

No. 94 CIV. 0910 (LMM), 1995 WL 214482, at *5 (citing *Vernon Lumber Corp. v. Harcen

Constr. Co.,* 155 F.2d 348, 349 (2d Cir.1946)).

Here, Debtor does not argue that Purchaser has *explicitly* waived any of its contractual

rights.  Debtor argues instead that Purchaser *implicitly* waived its claims for breach of contract

under the APA by (1) remaining silent in the face of repeated statements by the Court and Debtor

at the Rejection Hearing regarding its rights under the APA; and (2) failing to respond when the

Court directly questioned Debtor and invited any other party to chime in on the issue.  Motion ¶¶

23–28.

There are facts that lend support to Debtor's position.  There is no question that, on the

day of the Rejection Hearing, the Court repeatedly made plain its understanding of the Escrow

Agreement.  Hr'g. Tr. 11:23–12:9, 14:4–8; 14:17–15:5, 16:16–23, 18:3–10.  While the Court

directed its question on the topic to the Debtor, it also clearly welcomed any other party to

"chime in" if they disagreed with the Debtor's response.  Hr'g. Tr. 14:18–20.  Moreover,

Counsel for the Purchaser was not just present and observing the proceedings, but thoroughly

active throughout the Rejection Hearing, speaking substantially more than Debtor's counsel.

Finally, Purchaser made no objection or comment when, following the Rejection Hearing, the

Court ordered the Debtor to "release the $25,000 escrow and pay it to the Purchaser."  Rejection

Order at 2.

But notwithstanding these facts, the Court cannot grant summary judgment on the waiver

defense.  The case law disfavors summary judgment where waiver is based on the kind of silence

or inaction that occurred here.  *See, e.g., Beth Israel*, 448 F.3d at 586 ("There has, of course,

been evidence that the hospitals never previously objected to the [contract] rate of reimbursement they were receiving . . . , but we cannot determine that this failure to object, as a matter of law, effects a waiver."); *McDarren*, No. 94 CIV. 0910 (LMM), 1995 WL 214482, at *5 (holding that summary judgment was inappropriate based on alleged implied waiver where plaintiffs delayed in requesting a contractually promised "general release" while accepting other required performance in the form of payment of $850,000); *see also Royal Park Investments*, No. 14CV04394AJNBCM, 2016 WL 4613390, at *15 (finding that waiver was not established by a failure to invoke certain available contractual remedies or "otherwise object . . . to [the] alleged breach other than by bringing suit within the applicable statute of limitations" when under "no contractual obligation" to behave differently).   In cases where summary judgment is based upon waiver through silence, intent must be manifested more clearly by, for example, the passage of greater time or the active selection of alternative legal options.  *See Am. Int'l Grp.*, 756 F. Supp. 2d at 380–81 (S.D.N.Y. 2010) ("Franco Vago's failure to assert the forum selection clause during the first eleven months of the pending litigation goes far beyond mere silence, oversight, or thoughtlessness in failing to object . . . . Franco Vago made no mention of the clause in its answer, nor did it at any time file a motion to dismiss based on the forum selection clause . . . .").  No such circumstances exist here.

Moreover, for the reasons discussed above, the existence of the "no modification" clause casts further doubt on parties understanding of the Escrow Agreement and what they believed was at stake at the Rejection Hearing.  Construing the record in favor of the Purchaser for purposes of Debtor's Motion for summary judgment, the facts are not sufficient to provide a clear manifestation of Purchaser's intent to relinquish a contractual right.

### D. Res Judicata

Debtor also raises the defense of res judicata.  Res judicata, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284–285 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (same).  "The purpose of the doctrine . . . is to promote finality."  *In re DeFlora Lake Dev. Assocs., Inc.*, 517 B.R. 587, 594 (Bankr. S.D.N.Y. 2017) (citing *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995)).

Under federal law, res judicata "bars later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."[7]  *In re Motors Liquidation Co.*, 576 B.R. 313, 321 (Bankr. S.D.N.Y. 2017) (quoting *In re MF Glob. Holdings, Ltd.*, No. 11-15059 (MG), 2014 WL 3536977, at *4 (Bankr. S.D.N.Y. July 17, 2014)) (alteration in original).  "The burden is on the party seeking to invoke *res judicata* to prove that the doctrine bars the second action."  *In re DeFlora*, 517 B.R. at 595 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997)).  The current situation satisfies only three of the four requirements.

---

[7]      Federal preclusion standards apply when considering the effect of prior federal decisions resolving issues of federal law.  *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006); *but see In re Qiao Lin*, No. 14-42344-ESS, 2017 WL 4326370, at *8 (Bankr. E.D.N.Y. Sept. 28, 2017) ("[S]tate law rules of preclusion should be applied to state law claims that have been determined by a federal court exercising pendent or supplemental jurisdiction under 28 U.S.C. § 1367 in a federal question case.") (quoting *Curtis v. Ferrandina (In re Ferrandina)*, 533 B.R. 11, 23 (Bankr. E.D.N.Y. 2015)).  Regardless, "there is no discernible difference between federal and New York law concerning res judicata and collateral estoppel."  *Algonquin Power Income Fund v. Christine Falls of New York, Inc.*, 362 F. App'x 151, 154 (2d Cir. 2010) (citing *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)).

First, the Rejection Hearing concluded with a final judgment on the merits.  The Second Circuit has held that "a bankruptcy court order . . . constitutes a 'final judgment' and is thus a predicate for res judicata."  *EDP Med. Computer Sys., Inc. v. U.S.,* 480 F.3d 621, 625 (2d Cir.2007); s*ee Moore*, No. 02 CV 5021 NG/LB, 2008 WL 2357406, at *1 (finding a Bankruptcy Court's order sustaining an objection and expunging a proof of claim to be a final order for the purposes of res judicata).

Second, this Court was acting within its jurisdiction.  "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments."  28 U.S.C. § 157(b)(1).  *See Moore v. The Wiz, Cablevision*, No. 02 CV 5021 NG/LB, 2008 WL 2357406, at *1 (E.D.N.Y. June 4, 2008) (finding a Bankruptcy Court order sustaining an objection and expunging a proof of claim a "final judgment on the merits by a court of competent jurisdiction.").  At the Rejection Hearing, this Court ruled on issues well within its competence, namely on a debtor's request to terminate or reject a lease under the terms of a contract and Section 365(a) of the Bankruptcy Code, and on a party's request to seek relief from a Section 363 sale under FRCP 60(b).  *See Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 89 (2d Cir. 1997) ("There may be circumstances in which a bankruptcy court lacks competent jurisdiction, such as where it acts as a traffic court or a court of domestic relations. But . . . [h]ere, the bankruptcy court exercised powers that are within its competent jurisdiction: *e.g.,* confirm a plan of reorganization, 11 U.S.C. § 1129; classify claims, *id.* § 1123(a)(1); discharge claims, *id.* § 523; and provide the means for implementing a reorganization plan, *id.* § 1123(a)(5).").

Third, it is undisputed that the same parties were present through representation at the prior preceding.  Counsel for both Purchaser and Debtor (as well as AT&T) made appearances at the Rejection Hearing.  *See* Hr'g. Tr. at 1:10–18.

But Debtor's res judicata defense fails the fourth prong of the test because the current adversary proceeding does not involve any of the same causes of action as those resolved by the Rejection Hearing, and therefore does not bar Purchaser's claims.  The only causes of action before the Court that day were Debtor's motions for termination and rejection of the Cell Tower Lease and AT&T's sale relief request under FRCP 60(b).  Admittedly, a particular argument might still be precluded even if it is not made at a prior proceeding.  "*Res judicata* extends to all claims that '*were or could have been* raised in that action.'" *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d at 626 (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981)) (emphasis in original).  However, Purchaser's contract rights under the APA were not directly relevant to the motions then being litigated and, for the reasons states above, it is unclear whether Purchaser believed that staying silent on the issue would impact those rights.  Given the undisputed facts before the Court, therefore, the Debtor's res judicata defense fails.

## E.  Collateral Estoppel

Collateral estoppel, or issue preclusion, is distinct from res judicata.  "[U]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Burgos*, 14 F.3d at 789 (quoting *Allen*, 449 U.S. at 94); *see also In re Abreu*, 527 B.R. 570, 579 (Bankr. E.D.N.Y. 2015) ("Collateral estoppel, however, is a narrower doctrine than res judicata, and serves to preclude parties from relitigating specific issues that were raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two

suits are based on the same cause of action.") (citations omitted).  "Collateral estoppel under

federal law requires that '(1) the identical issue was raised in a previous proceeding; (2) the issue

was actually litigated and decided in the previous proceeding; (3) the party had a full and fair

opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a

valid and final judgment on the merits.'"  *In re Horowitz*, No. 14-36884 (CGM), 2016 WL

1039581, at *5 (Bankr. S.D.N.Y. Mar. 15, 2016) (quoting *Purdy v. Zeldes,* 337 F.3d 253, 258 (2d

Cir. 2003).  "The party asserting collateral estoppel bears the burden of demonstrating that it is

entitled to this relief."  *Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 93 (2d Cir.

2005) (citations omitted).

   Based on the undisputed facts before the Court, Debtor's collateral estoppel defense fails

on all prongs of the test and therefore does not bar Purchaser's claims.  First, the current

proceeding does not raise the same issues as addressed at the Rejection Hearing.  "To show the

identity of the issues, the Court must analyze 'whether the issues presented by this litigation are

in substance the same as those resolved . . . previously."  *In re Horowitz*, No. 14-36884 (CGM),

2016 WL 1039581, at *6 (quoting *Montana v. United States,* 440 U.S. 147, 155 (1979)).  Simply

put, the question of Purchaser's contract rights under the APA do not overlap at all with the

elements of a rejection claim under Section 365(a) or the elements of a request for relief from an

order under FRCP 60(b).  For the same reasons, the issues underlying this adversary proceeding

were not actually litigated and decided in the prior proceeding.  It is true that Purchaser attended

and participated in the Rejection Hearing and that the questions of Debtor liability and the

significance of the Escrow Agreement were discussed.  But those issues were not raised or

addressed by any of the briefing and, as a technical matter, were not at issue before the Court.

Any discussion of the issues by this Court or the parties was peripheral to the matters actually

being litigated at the Rejection Hearing.  *See, e.g., Khandhar v. Elfenbein*, 943 F.2d 244, 248 (2d Cir. 1991) (noting that to dismiss an action on the basis of issue preclusion, a court must find that the issue was squarely addressed and specifically decided in the prior proceeding).

## F.  Law of the Case

Debtor's final defense is the doctrine of the law of the case.  That doctrine provides that "[w]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009).  "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.  These rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991); *see In re Motors Liquidation Co.*, 576 B.R. at 321 ("Where *res judicata* bars parties in subsequent actions from relitigating what has already been decided, law of the case holds that a court should adhere to its earlier decisions in subsequent stages of litigation . . . .") (citations omitted).  "Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (citations omitted).  "[T]he law of the case doctrine does not apply to dicta, but only a prior court's rulings of law." *Russul Corp. v. Zim Am. Integrated Shipping Servs. Co.*, No. 06 CIV. 0037JCF, 2009 WL 3247141, at *4 (S.D.N.Y. Oct. 5, 2009) (collecting cases).  The doctrine of the law of the case "operates to create efficiency, finality, and obedience within the judicial system." *In re AMR Corp.*, 567 B.R. 247, 254 (Bankr. S.D.N.Y. 2017) (quoting *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F.Supp.2d 1344, 1363 (S.D. Fla. 2005)).  "It is not a substantive limit on the power of the court . . . and

every court retains the authority to reconsider its prior non-final rulings." *In re AMR Corp.*, 567

B.R. at 254 (quoting *Liani v. Baker*, 2010 WL 2653392, at *11 (E.D.N.Y. June 28, 2010)).

For the purposes of the law of the case, this adversary proceeding is part of the same

"case" as the Rejection Hearing and Rejection Order. *See In re Moise*, No. 15-73102-AST, 2017

WL 3126851, at *9 (Bankr. E.D.N.Y. July 20, 2017) (under the law of the case doctrine, separate

contested events or adversary proceedings tied to a single main bankruptcy case are all part of

the same case); *In re AMR Corp.*, 567 B.R. at 256 (collecting cases); *In re Terrestar Corp.*, No.

16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017), *appeal dismissed* (June

7, 2017); *see also Artra Grp., Inc. v. Salomon Bros. Holding Co.*, No. 93 A 1616, 1996 WL

637595, at *4 (N.D. Ill. Oct. 31, 1996) ("In the bankruptcy context, the word 'case' is a term of

art which refers to 'that which is commenced by the filing of a petition; it is the "whole ball of

wax," the chapter 7, 9, 11, 12 or 13 case.'") (quoting 5 Collier on Bankruptcy ¶ 1109.02[4]

(Lawrence P. King, ed., 15th ed. 1996)).

But Debtor's law of the case defense fails on the same grounds as its other preclusion

defenses—the Court did not resolve any of the issues raised in this action either expressly or

necessarily by implication during the prior proceedings.  The only motions argued in front of the

Court at the Rejection Hearing on June 27, 2016 were the Debtor's Rejection Motion and

AT&T's Rejection Objection.  The Court's verbal order (and subsequent written Rejection

Order) granting AT&T's 60(b) motion was made expressly in reliance on the fact that AT&T did

not receive proper notice of the bankruptcy sale in the first instance.[8]  The Court's verbal order

---

[8]     The transcript reads:

"So based on the record before the Court, the Court concludes that the building was not sold free and clear of this lease. That's because there was no dispute that AT&T was not given notice of the sale motion, was not a noticed party."

Hr'g. Tr. 16:24–17:4.

(and subsequent written Rejection Order) denying Debtor's Rejection Motion was made expressly in reliance on finding that (1) AT&T presented evidence that it had in fact continued making lease payments until sale of the Property to Purchaser; and (2) that the Debtor conceded it was not a party to the Cell Tower Lease originally or at that time.[9]  For neither ruling was an interpretation of the Escrow Agreement, the purpose of the $25,000 escrow account, or any other limit on Debtor liability discussed or relevant.

While the Court did raise the escrow in an attempt to prevent additional litigation, the Court's statements during the Rejection Hearing regarding Debtor liability were not a ruling but merely an effort at clarifying the situation.  The Court repeatedly noted on the record that its *understanding* at that time was that Debtor's liability related to the Cell Tower issue was limited to the $25,000 placed in escrow.  Hr'g. Tr. 11:23–12:9, 14:4–8; 14:17–15:5, 16:16–23, 18:3–10. The Court requested clarification from Debtor's counsel while inviting "anybody else [to] chime in if they disagree or . . . want to be heard on th[e] issue."  Hr'g. Tr. 14:18–20.  In the preamble to the Rejection Order, the Court wrote: "*it appearing* that the Debtor's liability in connection with the Cell Tower Lease is a $25,000 escrow account that was established at the closing on the sale at the request of the Purchaser."  Rejection Order at 2 (emphasis added).

---

[9]     The transcript reads:

    "So as to the motion to reject the lease, the basis for that motion was nonpayment. Evidence was presented to me, however, that in fact payments were made. Moreover, the debtor concedes the lease was not and is not with the debtor but with the party that predates Messrs. Miller and Sprei in this case. So it's not all that surprising that debtors may or may not know whether payments had been made. Indeed, anyone who spent any time in this case knows there was a massive amount of confusion surrounding the affairs of Mr. Miller and Sprei as to this property and other matters in this case and a huge amount of resulting litigation. We can just add this lease as one more to the body count of that confusion. But given all these facts, the Court does not have a basis at the moment to grant the motion to reject the lease and will deny it without prejudice based on what I have."

Hr'g. Tr. 17:13–18:2.

Admittedly, the Court indicated reliance on the alleged liability limit when preserving AT&T and Purchaser's rights outside of the bankruptcy court. *See* Hr'g. Tr. 18:5–13 (ruling that AT&T and the Purchaser's rights in respect of the post-sale lease payments were preserved while observing that the "issue does not concern the debtor's estate given the debtor's lack of any further liability relating to this lease or any claims that the debtors might have arising under this lease."); Rejection Order at 2 ("ORDERED, that all of AT&T's and the Purchaser's rights, claims, and defenses under the Cell Tower Lease and applicable non-bankruptcy law are preserved . . . ."). But this does not change the fact that (1) the Court never actually *ruled* on the issue but rather merely observed what "appeared" to be the state of the facts; and (2) the question of Debtor liability simply was not a legally relevant factor for the actual motions under consideration. *See United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 397–98 (3d Cir. 2003) (after writing that it "believe[d]" the district court had ruled correctly on an issue, the court acknowledged in a footnote that the question of whether the standard applied below had been superseded by new law had only been raised by the appellate court itself during oral argument and it therefore disclaimed any settled opinion on the issue); *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1578 (11th Cir. 1992) (after observing that a contribution action might be barred by a settlement, the court acknowledged that the lower court had not actually ruled on the issue and that parties still retained any related rights); *Forbes v. Lenox Fin. Mortg., LLC*, No. 1:08-CV-2513-CC, 2009 WL 10664946, at *1 (N.D. Ga. Feb. 12, 2009) (observing that after the prior court had opined on propriety of venue, it had "correctly recognized that it lacked jurisdiction to review or alter its transfer order[] in any event"); s*ee also United Artists Theatre*, 316 F.3d at 397–98 (the "law-of-the-case doctrine relieves a court of the obligation of considering an issue *twice*, but [the court] must be careful to prevent the doctrine

from being used to prevent a properly raised argument from being considered even *once*")

(emphasis in the original).  Therefore, based on the undisputed facts before the Court, Debtor's

law of the case defense also fails.

## CONCLUSION

For all the reasons stated above, the Court denies both Motions for summary judgment.

The parties shall settle an order and jointly confer about the next stage in these proceedings,

including the possibility of mediation.  The parties also shall contact Chambers within 14 days to

schedule a status conference.


Dated: New York, New York
      February 9, 2018


                    ***/s/ Sean H. Lane***_____
                    UNITED STATES BANKRUPTCY JUDGE